UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LOWELL HANDLER,

                              Plaintiff,

            -against-

DUTCHESS COUNTY COMMUNITY
COLLEGE,

                              Defendant.

---

**OPINION AND ORDER**

21-CV-02637 (PMH)

PHILIP M. HALPERN, United States District Judge:

Lowell Handler ("Plaintiff") initiated this action on March 26, 2021. (Doc. 1). He then filed a First Amended Complaint (Doc. 13, "FAC")[1] on November 23, 2021, asserting a single claim for relief for discrimination based on disability under the Americans with Disabilities Act ("ADA") against Dutchess County Community College ("Defendant").

Defendant served its motion for summary judgment in accordance with the briefing schedule set by the Court. (Doc. 50; Doc. 51, "Bernstein Decl."; Doc. 52, "Def. Br."; Doc. 53, "56.1"; Doc. 54; Doc. 55).[2] Plaintiff opposed Defendant's motion (Doc. 56, "Pl. Br."; Doc. 57; Doc. 58), and the motion was fully briefed with the filing of Defendant's reply papers (Doc. 59, "Reply").

For the reasons set forth below, Defendant's motion for summary judgment is GRANTED.

---

[1] The parties filed a stipulation on February 16, 2023, whereby Defendant consented to the filing of the FAC (Doc. 13) and deemed the Answer filed on December 17, 2021 (Doc. 18) as the operative Answer. (Doc. 41).

[2] Citations to the documents referenced herein correspond to the pagination generated by ECF.

## **BACKGROUND**

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion for summary judgment and draws them from the pleadings, Defendant's Rule 56.1 Statement and Plaintiff's responses thereto,[3] and the admissible evidence proffered by the parties. Unless otherwise indicated, the facts cited herein are undisputed.

Plaintiff, who suffers from Tourette's Syndrome, taught photography courses at Dutchess Community College full-time since 2000. (56.1 ¶¶ 4-6). Plaintiff taught a digital photography course in the Spring semester of 2019 which included a student, J.L. (*Id*. ¶ 10). In October 2019, J.L. filed a formal complaint against Plaintiff for, *inter alia*, touching her inappropriately and without permission during class. (*Id*. ¶¶ 11, 38-44). Also in October 2019, another student in Plaintiff's Spring 2019 class, G.G., filed a formal complaint against Plaintiff for, *inter alia*, touching her inappropriately without permission during class. (*Id*. ¶¶ 12, 47-50). G.G. additionally filed an informal complaint against Plaintiff indicating that he touched other students on the shoulders and thighs. (*Id*. ¶ 52). The Defendant convened two separate tribunal panels to investigate the students' respective claims. (*Id*. ¶ 13). Both students testified before the panel charged with investigating their complaint against Plaintiff. (*Id*. ¶¶ 45, 53). Thereafter, the panels issued separate reports, both finding that the students' complaints were credible. (*Id*. ¶ 31).

On November 11, 2019, and before the panels' decisions were announced, Plaintiff notified Defendant of his intention to retire. (*Id*. ¶¶ 33-34, 59). Plaintiff testified that prior to sending this email the HR Director told him verbally that if he did not retire, they would de-tenure and terminate

---

[3] The parties combined their respective Rule 56.1 Statements into one document. (Doc. 53). The Court notes that Defendant sets forth its sixty-four paragraph "Rule 56.1 Statement" and then Plaintiff began his "Counter Statement" setting forth additional facts in numbered paragraphs beginning again at number one. For the sake of clarity, the Court hereafter refers to the first section of the document as "56.1 Stmt." (Doc. 53 at 1-13) and the second section as "Pl.'s CntrStmt." (*id*. at 18-27).

him. (Bernstein Decl. Ex. C at 150:24-151:4).[4] On January 13, 2020, President Eddington provided Plaintiff two letters pertaining to the findings of the panels' investigations and her response to those investigations. (56.1 ¶¶ 60-61). The letters stated that the panels found that it was more likely than not that Plaintiff was responsible for sexual harassment, that he was no longer qualified to be a faculty member, and was to stay off the campus. (Pl.'s CntrStmt. ¶ 18). Thereafter, Plaintiff and his counsel negotiated the terms of Plaintiff's retirement. (Bernstein Decl. Ex. C at 151:9-152:5). On February 26, 2020, Plaintiff was notified that the Board of Trustees approved his request for early retirement, and Plaintiff retired from Dutchess Community College. (56.1 ¶¶ 63-64).

This litigation followed.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-3875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[5] "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-5486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). "The

---

[4] Plaintiff references a "Handler Affidavit" in the Rule 56.1 Statement responses, his Counter Statement, and opposition brief. Defendant indicates that no such affidavit was ever supplied to defense counsel prior to the preparation of its Reply. (Reply at 5). The Court was not provided a copy of this affidavit nor has it found such an affidavit filed on the docket. Accordingly, the Court will disregard any citations to the "Handler Affidavit."

[5] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

question at summary judgment is whether a genuine dispute as to a *material* fact exists—not whether the parties have a dispute as to any fact." *Hernandez v. Comm'r of Baseball*, No. 22-343, 2023 WL 5217876, at *5 (2d Cir. Aug. 15, 2023); *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022)).

The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at * 4 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary

judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her[] claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

Courts in this Circuit have acknowledged the dangers of summary judgment in discrimination cases. *See, e.g., Banks v. Gen. Motors, LLC*, 81 F.4th 242, 258-59 (2d Cir. 2023) (collecting cases); *Benson v. Fam. Dollar Stores, Inc.*, No. 12-CV-01457, 2017 WL 11576213, at *3 (N.D.N.Y. Mar. 31, 2017) (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citations and internal quotation marks omitted)), *aff'd sub nom. Benson v. Fam. Dollar Operations, Inc.*, 755 F. App'x 52 (2d Cir. 2018). "Because of the likelihood that 'direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" *Id.* (quoting *Schwapp*, 118 F.3d at 110). "At the same time, [the Second Circuit has] also made it clear that 'the salutary purposes of summary judgment–avoiding protracted and harassing trials–apply no less to discrimination cases than to . . . other areas of litigation.'" *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000)). Accordingly, "even in the discrimination context, a plaintiff must still present more than

conclusory allegations to survive a motion for summary judgment." *Banks*, 81 F.4th at 259 (citing *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 92 (2d Cir. 1996)).

## ANALYSIS

I.   Disability Discrimination

Plaintiff's sole claim for relief alleges discrimination on the basis of disability in violation of the ADA.

The ADA prohibits covered entities from discriminating against qualified individuals on the basis of disability. 42 U.S.C. § 12112(a). The three-part burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) is used to analyze discrimination claims under the ADA. *Razzano v. Remsenburg-Speonk Union Free Sch. Dist.*, No. 20-03718, 2022 WL 1715977, at *2 (2d Cir. May 27, 2022). The plaintiff must first, under that framework, establish a *prima facie* case of employment discrimination based on a disability before the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the challenged actions. *Id.*; *see also Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016) ("Under that framework, a plaintiff must first establish a prima facie case of discrimination, which causes the burden of production to shift to the defendant to offer a legitimate, nondiscriminatory rationale for its actions."). A *prima facie* case of disability discrimination requires a plaintiff to establish that: (1) "his employer is subject to the ADA;" (2) "he is disabled within the meaning of the ADA or perceived to be so by his employer;" (3) "he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation;" and (4) "he suffered an adverse employment action because of his disability." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008). "In assessing causation under the fourth step, courts in the Second Circuit consider whether discrimination was the but-for cause of the adverse action." *Turner v. Delta*

*Airlines, Inc.*, No. 19-CV-2580, 2023 WL 2305935, at *5 (E.D.N.Y. Mar. 1, 2023) (citing *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019)).

Defendant argues that Plaintiff fails to make out a *prima facie* claim of discrimination because Plaintiff: (1) was not disabled within the meaning of the ADA; and (2) did not experience any adverse employment action. (Def. Br. at 19-22).  Defendant further argues that, in any event, it had a legitimate, non-discriminatory reason for terminating Plaintiff—sexual harassment—and Plaintiff failed to show evidence that this reason was merely a pretext for disability discrimination. (*Id*. at 19, 22-26). The arguments advanced by Defendant are analyzed *seriatim*.

A. Phase One: *Prima Facie* Case of Discrimination

First, Defendant argues that Plaintiff's condition—Tourette's Syndrome—is not a disability under the ADA. (Def. Br. at 19-20). Plaintiff contends that his condition, which is a neurological/psychological disorder that causes involuntary motor and verbal tics (Pl.'s CntrStmt. ¶ 2), is a disability because it substantially limits the major life activity of "interacting with others." (Pl. Br. at 12). Some courts have found "interacting with others" to be a major life activity within the meaning of the ADA. *See i.e. McAlindin v. Cnty. of San Diego*, 192 F.3d 1226, 1235 (9th Cir. 1999). In this regard, it is worth noting that Plaintiff's own primary care physician submitted to Defendant an ADA Medical Certification Form indicating that Plaintiff's condition of Tourette's Syndrome does not limit any of Plaintiff's major life activities. (Bernstein Decl. Ex. H). Second, Defendant argues that Plaintiff did not experience any adverse employment action because he elected to retire. (Def. Br. at 20). Plaintiff, however, asserts that he suffered an adverse employment action because his November 11, 2019 email was only a "notice" of retirement and he was "constructively discharged [on January 13, 2020] when he was advised of the President's decision to bar him from the campus and to disallow him from teaching." (Pl. Br. at 14).

The Court need not determine whether Plaintiff's condition was a disability under the ADA nor whether Plaintiff suffered an adverse employment action. Even assuming *arguendo* that Plaintiff had a disability under the ADA and was constructively discharged after learning of the President's decision, his claim would still fail because Defendant has articulated a legitimate, non-discriminatory reason for the termination. *See Russell v. New York Univ.*, 739 F. App'x 28, 33 (2d Cir. 2018).

B.  Phases Two and Three: Legitimate, Non-Discriminatory Reason and Pretext

Defendant has proffered a legitimate, non-discriminatory reason for terminating Plaintiff— namely, its determination that Plaintiff sexually harassed students.

Two students, J.L. and G.G., made formal complaints against Plaintiff involving inappropriate touching and/or comments made during class. (56.1 ¶¶ 11-12; Bernstein Decl. Ex. N; *id*. Ex. R). Specifically, J.L. complained that Plaintiff touched her breasts and buttocks. (56.1 ¶ 39). Plaintiff admitted at his deposition that he touched the back of J.L. during class, "probably" touched her on the shoulder and back, and "probably" touched her after she asked him not to, but denied ever touching J.L. on her breasts or buttocks. (*Id*. ¶¶ 16, 20; Bernstein Decl. Ex. C at 86:18-19, 93:4-6). Separately, G.G. asserted in her complaint that Plaintiff touched her on her vagina (which she later clarified to mean her pubic area). (56.1 ¶¶ 49, 54). Plaintiff admitted to touching G.G. but disputed where he touched her. (*Id*. ¶ 29; Bernstein Decl. Ex. C at 125:5-8).[6]

---

[6] Plaintiff argues with respect to the instant motion that the aforementioned conduct does not qualify as sexual harassment because Defendant's sexual harassment policy required that he "intended [to commit sexual harassment]," but his conduct lacked any "intentional sexual touching." (Pl. Br. at 18, 20). Defendant's policy defines sexual harassment as "behavior that is defined as unwelcome sexual advances, requests for sexual favors, and other physical or verbal conduct of a sexual nature when . . . such conduct has the purpose or effect of unreasonably interfering with an individual's work or academic performance . . . ." (Bernstein Decl. Ex. T. at 3). Accordingly, the Court rejects Plaintiff's position that touching a student constitutes sexual harassment only where there is *intentional* sexual touching.

Two separate tribunal panels investigated the claims and ultimately determined that Plaintiff had engaged in sexual harassment. (56.1 ¶¶ 13-15, 55-56, 57; Bernstein Decl. Ex. D; *id.* Ex. E). One panel found J.L.'s complaint to be "credible and likely an accurate description of inappropriate physical contact that meets the touching and pressing up standard of Sexual Assault and Sexual Violence definition." (56.1 ¶ 57). The other panel separately determined that G.G's complaint was substantiated, that it was more likely than not that Plaintiff touched G.G. in the pubic area without her affirmative consent, and that it was more likely than not that Plaintiff "engaged in a pattern of behavior including blatantly sexual comments, sexually laced humor, subtle sexual innuendo, and nonconsensual touching in the academic environment." (*Id.* ¶¶ 55-56; Bernstein Decl. Ex. E).[7] After reading the findings of the panels, Plaintiff admitted that he did make "many, though not all, of the reported inappropriate comments" during class time as noted in the panel reports and stated that his conduct over that past year "could easily be interpreted as profane or inappropriate." (56.1 ¶ 32).

"[I]nappropriate behavior is indisputably a legitimate non-discriminatory reason for dismissing [an employee] from [employment], even if that behavior resulted from his disability." *McElwee v. Cnty. of Orange*, 700 F.3d 635, 644 (2d Cir. 2012); *see also Canales-Jacobs v. New York State Off. of Ct. Admin.*, 640 F. Supp. 2d 482, 500 (S.D.N.Y. 2009) ("[O]n-the-job misconduct and poor work performance always constitute legitimate and nondiscriminatory reasons for terminating employment, even where the misconduct is caused by an undivulged psychiatric condition. The ADA does not excuse workplace misconduct because the misconduct is related to a disability."); *Johnson v. L'Oreal USA*, No. 21-2914-CV, 2023 WL 2637456, at *4,

---

[7] Plaintiff additionally testified at his deposition that he would touch students on their shoulders or arms, curse during class, and discuss topics that were sexual in nature. (56.1 ¶¶ 17, 25). Plaintiff also testified that another student, V.R., complained that Plaintiff opened nude pictures of her after she instructed him not to open those pictures on her flash drive. (*Id.* ¶ 21).

*6 (2d Cir. Mar. 27, 2023) (plaintiff's disrespectful conduct towards her supervisor, peers, and subordinates, including sending inappropriate text messages, "provide[d] ample support for L'Oréal's asserted non-discriminatory reasons for Johnson's termination.").

Defendant has satisfied its burden to establish a legitimate, non-discriminatory reason for the adverse employment action, irrespective of the truth of the allegations against Plaintiff concerning sexual harassment. *See Wade v. N. Y. City Dep't of Educ.*, 667 Fed. App'x 311 (2d Cir. 2016) (the truth of the allegations against the employee resulting in termination are immaterial); *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) ("In a discrimination case, however, we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what motivated the employer . . . ; the factual validity of the underlying imputation against the employee is not at issue."); *McElwee*, 700 F.3d at 645-46 (holding that employer is not required to countenance harassing behavior); *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 172 (2d Cir. 2006) ([T]his Court, like every other court to have taken up this issue, does not read the ADA to require that employers countenance dangerous misconduct, even if that misconduct is the result of a disability.").

The burden thus shifts back to Plaintiff to demonstrate that Defendant's reasons were a pretext for discrimination. *Osekavage v. Sam's East., Inc.*, 619 F. Supp. 3d 379, 390 (S.D.N.Y. 2022). A plaintiff may establish that an employer's stated reasons for termination are pretextual by pointing to direct evidence of discrimination or by evidence that he was treated differently from other similarly situated employees. *Johnson*, 2023 WL 2637456, at *4. Here, Plaintiff's only apparent argument regarding pretext is that "[D]efendant ignored relevant evidence that was contrary to its finding of guilt" and that "[D]efendant's neglect of such available evidence constitutes proof of its discriminatory motive." (Pl. Br. at 24). *See Reeves v. Sanderson Plumbing*

*Prod., Inc.*, 530 U.S. 133, 147-48 (2000) ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose."). Specifically, Plaintiff asserts that the principal decision-maker did not understand the context out of which the students' complaints developed, including the inconsistencies in J.L.'s and G.G.'s claims, the existence of possible ulterior motives to file complaints, and the friendship between the complainants. (Pl. Br. at 24-25). Plaintiff's argument essentially amounts to a disagreement with the panels' findings and is therefore not sufficient evidence of pretext. *See i.e. Carter v. TD Bank, N.A.*, No. 20-CV-01616, 2023 WL 3818589, at *8 (D. Conn. June 5, 2023) ("Plaintiff's protestations that he did nothing wrong, and that both the conclusion and process of Defendant's ethics investigation were flawed, are not sufficient to withstand summary judgment."); *see also Vasquez v. New York City Dep't of Educ.*, 667 F. App'x 326, 327 (2d Cir. 2016) (plaintiff "takes issue with a number of the allegations levied against him; however, the veracity of these allegations is immaterial to the question of pretext").

The record is clear that Defendant had a good faith non-discriminatory basis to believe that Plaintiff committed sexual harassment. *See Caruso v. Bon Secours Charity Health Sys. Inc.*, No. 14-CV-04447, 2016 WL 8711396, at *10 (S.D.N.Y. Aug. 5, 2016) ("[T]he question is not whether Franco and the other managers were wrong about plaintiff hitting Edwards, but whether they had a good faith, non-discriminatory belief that plaintiff's conduct warranted termination under Bon Secours's policies."), *aff'd*, 703 F. App'x 31 (2d Cir. 2017). Plaintiff fails to provide any evidence undermining Defendant's reasonable belief or any other evidence of pretext revealing discriminatory intent beyond the four corners of his own mind and necessary to create a triable issue of fact. *McNeil v. Vradenburgh*, No. 18-CV-09353, 2021 WL 797657, at *8 (S.D.N.Y. Feb.

26, 2021). Therefore, Plaintiff's arguments of alleged pretext are insufficient to overcome Defendant's legitimate, non-discriminatory reason for Plaintiff's termination.

Accordingly, Defendant's motion for summary judgment dismissing Plaintiff's disability discrimination claim for relief is granted.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. Plaintiff's First Amended Complaint is dismissed.

The Clerk of Court is respectfully requested to terminate the pending motion sequence (Doc. 50) and close this case.

SO ORDERED.

Dated: White Plains, New York
       January 30, 2024

_____
Philip M. Halpern
United States District Judge

12